# UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

STANLEY C. REESE,

        Appellant,

     v.

DEPARTMENT OF THE INTERIOR,

        Agency.

DOCKET NUMBER
SF-1221-16-0110-W-1

DATE: September 2, 2016

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

<u>David Pardo</u>, Esquire, Albuquerque, New Mexico, for the appellant.

<u>Anna Roe</u>, Portland, Oregon, for the agency.

## BEFORE

Susan Tsui Grundmann, Chairman
Mark A. Robbins, Member

## FINAL ORDER

¶1      The appellant has filed a petition for review of the initial decision, which denied his request for corrective action under 5 U.S.C. § 1221. Generally, we grant petitions such as this one only when: the initial decision contains erroneous findings of material fact; the initial decision is based on an erroneous interpretation of statute or regulation or the erroneous application of the law to

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

the facts of the case; the administrative judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case; or new and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed. *See* title 5 of the Code of Federal Regulations, section 1201.115 (5 C.F.R. § 1201.115). After fully considering the filings in this appeal, we conclude that the petitioner has not established any basis under section 1201.115 for granting the petition for review. Therefore, we DENY the petition for review. Except as expressly MODIFIED by this Final Order, to VACATE the finding that the agency proved by clear and convincing evidence it would have suspended the appellant in the absence of his disclosure, we AFFIRM the initial decision. The appellant's request for corrective action is DENIED.

## BACKGROUND

¶2      At all times relevant to this appeal, the appellant was employed as a Maintenance Worker, WG-4749-08, at the agency's Badon Marsh Wildlife Refuge. Initial Appeal File (IAF), Tab 2 at 7. On September 21, 2014, Dr. W.B., a wildlife biologist at Badon Marsh, had a collision while driving a Government-owned vehicle in the refuge, resulting in a dent to the tailgate. IAF, Tab 11 at 5-8, Tab 28 at 23-24. The appellant contacted the General Services Administration (GSA) to inquire about repairing the vehicle, and, in late December 2014, he provided Dr. W.B. a Standard Form 91 (SF-91), Motor Vehicle Accident Report, which needed to be completed and returned to the GSA to obtain approval for the necessary repairs. IAF, Tab 11 at 9. On January 9, 2015, Dr. W.B. completed the SF-91 and gave it to the appellant's supervisor, Mr. E.M. IAF, Tab 11 at 5-8. Mr. E.M. signed the form and sent it to GSA for approval. *Id*. On January 22, 2015, the GSA approved the repair. IAF, Tab 2

at 49. Mr. E.M. sent the approval letter to the appellant and asked him to coordinate the necessary repairs. *Id*. at 48.

¶3    After receiving the approval letter on January 22, 2015, the appellant noticed that Dr. W.B. had entered an incorrect date at two locations on the form, indicating that the accident took place on December 21, 2014, instead of September 21, 2014. Hearing Compact Disc (HCD) (testimony of appellant); *see* IAF, Tab 11 at 5-6. That same day, the appellant called Mr. R.L., the GSA employee who had approved the repair to notify him of the discrepancy. HCD (testimony of the appellant). Shortly thereafter, the GSA employee telephoned Mr. E.M. to inform him of his conversation with the appellant. IAF, Tab 11 at 14. According to Mr. E.M.'s contemporaneous memorandum, the GSA employee "sounded very distraught." *Id*. Mr. E.M. responded that he did not know why the appellant would be calling him and that he would contact the appellant to find out what was going on. *Id*. Minutes later, the GSA employee again called Mr. E.M. and told him the appellant had called a second time to request a phone number to report fraud, waste, and abuse. *Id*.; *see* HCD (testimony of the appellant). Mr. E.M. apologized and again reassured the GSA employee that he would call the appellant and get to the bottom of the matter. IAF, Tab 11 at 14. Mr. E.M. then called the appellant, who explained that an incorrect date was listed on the SF-91. *Id*. Shortly thereafter, Mr. E.M. met with Dr. W.B. and concluded that Dr. W.B. had made a clerical error and entered the wrong date. *Id*. Dr. W.B. changed the listed date at both locations on the form and initialed his changes, and Mr. E.M. sent the updated form to GSA. IAF, Tab 2 at 51, Tab 11 at 5-8.

¶4    Later that afternoon, the appellant submitted an online complaint form to the GSA Office of Inspector General Fraud Hotline Office, alleging "falsification of a government accident report." IAF, Tab 2 at 50. The following day, January 23, 2015, the GSA fleet office emailed the appellant to inform him that it

had received an amended SF-91 with a corrected accident date. *Id*. The email stated that "GSA considers this issue to be resolved from our perspective." *Id*.

¶5      On February 12, 2015, the appellant filed a complaint with the Office of Special Counsel (OSC), in which he alleged that the agency retaliated against him for his disclosures concerning the SF-91 when it implemented performance standards without his agreement, threatened to reprimand him, and engaged in "office exclusions and isolation." *Id*. at 2-32. Subsequently, on April 17, 2015, Mr. E.M. suspended the appellant for 5 days for failure to follow supervisory instructions. IAF, Tab 21 at 3-6, 10. On May 17, 2015, the appellant supplemented his OSC complaint to include the 5-day suspension as an alleged retaliatory action. IAF, Tab 2 at 36-39. On August 28, 2015, OSC notified the appellant that it had terminated its investigation and notified him of his right to seek corrective action with the Board. *Id*. at 18. This appeal followed. *Id*. at 1-6.

¶6      Based on the parties' written submissions, the administrative judge determined that the appellant had established jurisdiction over his individual right of action (IRA) appeal and was entitled to a hearing. IAF, Tab 22. Following the hearing, the administrative judge issued an initial decision denying the appellant's request for corrective action. IAF, Tab 42, Initial Decision (ID). She first found that the appellant failed to prove by preponderant evidence that his disclosure to the GSA concerning the SF-91 was protected under 5 U.S.C. § 2302(b)(8). ID at 9-13. She further found that the disclosure, had it been protected, would have been a contributing factor in the agency's decision to suspend the appellant, but that the other alleged retaliatory actions were not covered "personnel actions" under 5 U.S.C. § 2302(a)(2)(A). ID at 13-17. Finally, the administrative judge found that the agency demonstrated by clear and convincing evidence that it would have suspended the appellant even if he had not communicated with GSA concerning the incorrect date on the SF-91. *Id*. at 17-23.

¶7    On review, the appellant contends that the administrative judge erred in finding that his disclosure to the GSA was not protected, and in finding that the agency proved by clear and convincing evidence that it would have suspended him in the absence of that disclosure.  Petition for Review (PFR) File, Tab 1.  He does not contest the administrative judge's findings as to the other alleged personnel actions.  *Id.*  The agency has filed a response, to which the appellant has replied.  PFR File, Tabs 3-4.

## DISCUSSION OF ARGUMENTS ON REVIEW

¶8    A protected disclosure is a disclosure that an appellant reasonably believes evidences a violation of any law, rule, or regulation, gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety.  5 U.S.C. § 2302(b)(8)(A).  A reasonable belief exists if a disinterested observer with knowledge of the essential facts known to and readily ascertainable by the appellant could reasonably conclude that the actions of the Government evidence one of the categories of wrongdoing listed in section 2302(b)(8)(A).  *Lachance v. White*, 174 F.3d 1378, 1381 (Fed. Cir. 1999).  The appellant need not prove that the matter disclosed actually established one of the types of wrongdoing listed under section 2302(b)(8)(3A); rather, he must show that the matter disclosed was one that a reasonable person in his position would have believed evidenced any of the situations specified in 5 U.S.C. § 2302(b)(8)(A).  *Chavez v. Department of Veterans Affairs*, 120 M.S.P.R. 285, ¶ 18 (2013).

¶9    The appellant argued below that his communication with GSA concerning the SF-91 was a protected disclosure under 5 U.S.C. § 2302(b)(8) because he reasonably believed it evidenced a violation of law, rule, or regulation, specifically, 18 U.S.C. § 1001.  IAF, Tab 15 at 6.  The statute in question provides that, regarding any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States, it is a

crime to knowingly and willfully: (1) falsify, conceal, or cover up by any trick, scheme, or device a material fact; (2) make any materially false, fictitious, or fraudulent statement or misrepresentation; or (3) make or use any false writing or document knowing the same to contain any materially false, fictitious, or fraudulent statement or entry. 18 U.S.C. § 1001. The appellant correctly notes that the reasonableness of his belief that 18 U.S.C. § 1001 had been violated depends on the information that was available to him at the time of the disclosure. PFR File, Tab 1 at 6. We also have considered that the GSA employee whom the appellant called was distressed by the allegation of fraud, though his concern may have had more to do with the appellant's intent to report the matter than with the alleged fraud itself. *Id*. at 5-6. Nonetheless, we agree with the administrative judge that a disinterested observer would not have reasonably concluded that Dr. W.B. knowingly and willfully falsified the date, as opposed to making a clerical error, or that in doing so he falsified a material fact.[2] Accordingly, we discern no error in the administrative judge's finding that the appellant did not make a protected disclosure under 5 U.S.C. § 2302(b)(8).

¶10     The appellant also contests the administrative judge's finding that the agency proved by clear and convincing evidence that it would have suspended him in the absence of his disclosure. However, under 5 U.S.C. § 1221(e)(2), the Board will not proceed to the clear and convincing test unless it has first

---

[2] On review, the appellant argues for the first time that, even if the incorrect date on the SF-91 was not material for purposes of 18 U.S.C. § 1001, he nonetheless may have disclosed a violation of some other law, rule, or regulation that does not include a materiality requirement. PFR File, Tab 1 at 6-7. He correctly observes that an employee alleging whistleblowing reprisal is not required to identify the particular statutory or regulatory provision that the agency purportedly violated if his statements and the circumstances of those statements clearly implicate an identifiable violation of law, rule, or regulation. *See Baldwin v. Department of Veterans Affairs*, 113 M.S.P.R. 469, ¶ 12 (2010). However, the appellant explicitly identified 18 U.S.C. § 1001 as the law that was violated, IAF, Tab 15 at 6, and his disclosure of the incorrect entry on the SF-91 does not clearly implicate any other identifiable violation of law, rule, or regulation.

determined that the appellant made a protected disclosure that was a contributing factor in the contested personnel action. *Clarke v. Department of Veterans Affairs*, 121 M.S.P.R. 154, ¶ 19 n.10 (2014), *aff'd*, 623 F. App'x 1016 (Fed. Cir. 2015). We find, having determined that the appellant did not make a protected disclosure, it was error for the administrative judge to consider whether the agency met its burden under the clear and convincing test.[3] Accordingly, we vacate that portion of the initial decision. The appellant's arguments concerning the clear and convincing test issue are moot, and we therefore do not address them. *See id.*, ¶ 19.

### NOTICE TO THE APPELLANT REGARDING YOUR FURTHER REVIEW RIGHTS

You have the right to request review of this final decision by the U.S. Court of Appeals for the Federal Circuit.

The court must receive your request for review no later than 60 calendar days after the date of this order. *See* 5 U.S.C. § 7703(b)(1)(A) (as rev. eff. Dec. 27, 2012). If you choose to file, be very careful to file on time. The court has held that normally it does not have the authority to waive this statutory deadline and that filings that do not comply with the deadline must be dismissed. *See Pinat v. Office of Personnel Management*, 931 F.2d 1544 (Fed. Cir. 1991).

If you want to request review of the Board's decision concerning your claims of prohibited personnel practices under 5 U.S.C. § 2302(b)(8), (b)(9)(A)(i), (b)(9)(B), (b)(9)(C), or (b)(9)(D), but you do not want to challenge the Board's disposition of any other claims of prohibited personnel practices, you may request review of this final decision by the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction. The court of appeals must receive your petition for review within 60 days after the date of this

---

[3] However, we find that the administrative judge's procedural error is of no legal consequence because it has not been shown to have adversely affected a party's substantive rights. *Karapinka v. Department of Energy*, 6 M.S.P.R. 124, 127 (1981).

order.  *See* 5 U.S.C. § 7703(b)(1)(B) (as rev. eff. Dec. 27, 2012).  If you choose to file, be very careful to file on time.  You may choose to request review of the Board's decision in the U.S. Court of Appeals for the Federal Circuit or any other court of appeals of competent jurisdiction, but not both.  Once you choose to seek review in one court of appeals, you may be precluded from seeking review in any other court.

If you need further information about your right to appeal this decision to court, you should refer to the Federal law that gives you this right.  It is found in title 5 of the U.S. Code, section 7703 (5 U.S.C. § 7703) (as rev. eff. Dec. 27, 2012).  You may read this law as well as other sections of the U.S. Code, at our website, http://www.mspb.gov/appeals/uscode/htm.  Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, and 11.  Additional information about other courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

If you are interested in securing pro bono representation for your appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit.  The

Merit Systems Protection Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

FOR THE BOARD:                          _____
                                         Jennifer Everling
                                         Acting Clerk of the Board

Washington, D.C.